## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JENNIFER CHASSER,

       *Plaintiff,*

  vs.

                          Case No. 15-1387-EFM

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

       *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Jennifer Chasser seeks review of a final decision by Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits under Title II of the Social Security Act. Chasser alleges that the administrative law judge ("ALJ") erred by failing to support his residual functional capacity ("RFC") assessment with substantial evidence. Having reviewed the record, and as described below, the Court disagrees and affirms the Commissioner's decision.

### I.      Factual and Procedural Background

Jennifer Chasser was born on January 6, 1969. On July 10, 2012, Chasser protectively applied for disability insurance benefits, alleging a disability beginning on June 21, 2012. The application was denied initially and upon reconsideration. Chasser then asked for a hearing before an ALJ. ALJ Michael D. Shilling conducted an administrative hearing on June 10, 2014.

Chasser appeared and testified about her medical condition.  An impartial vocational expert also appeared and testified about potential employment prospects for someone of Chasser's capabilities.

On August 29, 2014, the ALJ issued his written decision, finding that Chasser had not engaged in substantial gainful activity since the alleged onset date.  The ALJ found that Chasser suffered from fibromyalgia, degenerative disc disease of the spine, osteopenia, tendonitis of the right hip, plantar fasciitis, depression, attention deficit disorder ("ADD"), and post-traumatic stress disorder ("PTSD").  The ALJ found that these impairments were severe.  And yet, the ALJ determined that Chasser did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ then determined that Chasser has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a).  More specifically, the ALJ made the following findings:  Chasser can lift 10 pounds occasionally and frequently.  She can walk or stand 2 hours in an 8-hour workday and sit for 6 of those hours.  She can occasionally climb stairs, but never ropes, ladders, or scaffolds.  She can occasionally stoop, but can never crouch, kneel, or crawl.  She can frequently handle, finger, or feel, but could only occasionally reach or handle an object overhead. She should avoid prolonged exposure to vibrating machinery, unprotected heights, and hazardous machinery.   And finally, due to her chronic pain, side effects, and mental impairments, she is limited to jobs that do not demand attention to details or involve complicated tasks or instructions.  In assessing Chasser's RFC, the ALJ determined that she did not require the use of a walker.

Given Chasser's RFC, the ALJ found that she was unable to perform any of her past relevant work.  But considering Chasser's age, education, work experience, and RFC, the ALJ concluded that a significant number of jobs existed in the national economy that Chasser is capable of performing. Thus, the ALJ concluded that Chasser had not been under a disability from June 21, 2012, through the date of the decision.

Chasser requested a review of the hearing with the Appeals Council, which was denied on October 9, 2015.  Accordingly, the ALJ's August 2014 decision became the final decision of the Commissioner.  Chasser filed a complaint in the United States District Court for the District of Kansas.  She seeks reversal of the ALJ's decision and remand for a new administrative hearing.  She also seeks the award of her costs and reasonable attorney's fees.  Because Chasser has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act which provides, in part, that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[1]  The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[2]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind

---

[1] 42 U.S.C. § 405(g).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

might accept to support the conclusion."[3]   The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[4]

An individual is under a disability only if she "can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[5]   This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[6]

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[7]   The steps are designed to be followed in order.   If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[8]

The first three steps of the sequential evaluation require the ALJ To assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether

---

[3] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[5] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[6] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002); 20 C.F.R. § 416.920 (2005)).

[7] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a).

[8] *Barkley*, 2010 WL 3001753, at *2.

the severity of those severe impairments meets or equals a designated list of impairments.[9]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from his impairments."[10]

Upon assessing the claimant's RFC, the ALJ moves on to steps four and five, which require the ALJ to determine whether the claimant can either perform his past relevant work or whether he can generally perform other work that exists in the national economy, respectively.[11] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[12]  The burden then shifts to the ALJ at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[13]

### III.    Analysis

Chasser argues that the ALJ's RFC determination was not supported by substantial evidence.  The RFC assessment must be based on all relevant evidence in the case record.[14]  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why

---

[9] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[10] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[11]*Id.* at *2 (citing *Williams*, 844 F.2d at 751).

[12] *Lax*, 489 F.3d at 1084.

[13] *Id.*

[14] Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *5 (Soc. Sec. Admin. July 2, 1996).

the medical opinion was not adopted.[15]  But there is no requirement that the RFC findings directly correspond to a specific medical opinion in the record.[16]  And the RFC assessment need not discuss every single piece of evidence.[17]  Although the record must demonstrate that the ALJ considered all of the evidence, he is only required to discuss the evidence supporting his decision, uncontroverted evidence he chooses not to rely on, and significantly probative evidence he rejects.[18]

Chasser raises a narrow issue in her appeal.  She claims that the RFC assessment is incorrect because the ALJ rejected her claim that she required a walker to stand and walk.  In his written decision, the ALJ stated that "the record reveals [Chasser] is able to ambulate without the assistance of her walker."  The ALJ noted that in 2013, Chasser claimed she only used her walker occasionally, and at times appeared for treatment using only a cane or no assistive device at all.  At the hearing, Chasser testified that she had been using a walker for about two years. She stated that she used a walker "pretty much all the time" but she did not use the walker in the home "because it's just short distances."  She also testified that she used a cane, and not a walker, when she went to the convenience store.  She stated that "if I'm going to walk more than about five minutes, then I definitely have to have my roller [walker]."  Chasser claimed that she could only stand for about 10 minutes with the assistance of her walker.  At the time of her testimony, she stated she was unable to stand at all without holding onto something.  The ALJ found that Chasser's testimony was not entirely credible because parts were inconsistent with the

---

[15] *Id.*

[16] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

[17] *Hendron v. Colvin*, 767 F.3d 951, 955 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

[18] *Id.*

rest of the record.  Ultimately, the ALJ found that Chasser did not require a walker, and based her RFC on the objective evidence, cognitive testing, clinical signs and findings, and Chasser's activities of daily living.

Chasser asserts that the ALJ did not assign enough weight to the opinion of her treating physician, Dr. Nancy Nowlin.  She argues that Dr. Nowlin's position was that a walker was medically necessary, and the ALJ improperly discounted that opinion.  Generally, the ALJ should give more weight to opinions from treating sources over the opinions of other medical professionals.[19]  If the treating physician's opinion is not entitled to controlling weight, the ALJ still must determine what weight, if any, to assign to the opinion by considering the factors listed at 20 C.F.R. § 404.1527.[20]  The ALJ must give specific, legitimate reasons if she completely rejects the treating physician's opinion.[21]  And so, if Dr. Nowlin opined that Chasser needed a walker, then the ALJ should have explained why he rejected that opinion.

But Chasser's argument rests on a flawed premise: that Dr. Nowlin felt a walker was medically necessary.  In reality, Chasser fails to demonstrate that Dr. Nowlin believed a walker was medically necessary.  The ALJ noted that in July 2012, Dr. Nowlin placed no restrictions on Chasser's activities.  On July 8, 2014, Chasser's counsel sent Dr. Nowlin a letter asking if she believed a walker was medically necessary.  In her response, Dr. Nowlin did not directly answer the question about the necessity of the walker; she simply responded that "[t]he walker was ordered on 9/21/2012 due to lower extremity pain and difficulty walking."  Dr. Nowlin did not elaborate further.

---

[19] 20 C.F.R. § 404.1527(c).

[20] *Id*. at 1176-77.

[21] *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

Dr. Nowlin's brief response can hardly be characterized as an opinion that Chasser medically required a walker.  Social Security Ruling 96-9p addresses the use of an assistive device in the context of an ALJ's determination that a claimant is capable of performing less than a full range of sedentary work.[22]  Although here the ALJ found that Chasser was capable of sedentary work, the standard set forth by the administration is still instructive.[23]  The ruling states, in relevant part:

> "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e. whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information.)"

Dr. Nowlin's letter did not state that the walker was medically necessary; she actually avoided that direct question and only stated passively that the walker "was ordered."  She did not address whether it was for walking or standing or the circumstances in which it would be used.  "SSR 96-9p requires more than generalized evidence of a condition that might require the use of a cane.  It requires medical documentation *establishing the need* for a hand-held assistive device."[24]  Dr. Nowlin's terse response fails to meet such a standard.  And so, Chasser's claim that the ALJ improperly rejected Dr. Nowlin's opinion that a walker was medically required is without merit because Dr. Nowlin never expressed such an opinion.

Chasser also argues that the ALJ ignored the medical evidence overall, which shows that Chasser required a walker.  But almost all of the medical evidence that Chasser identifies are nothing more than non-opinion observations tucked into doctors' notes.  The most common

---

[22] 1996 WL 374185.

[23] *See Staples v. Astrue*, 329 F. App'x 189, 191 n. 1 (10th Cir. 2009).

[24] *Id.* at 192. (internal quotation mark omitted).

example was a simple note that Chasser "has [a] wheeled seated walker" with no more elaboration.

None of this evidence comes in the form of opinions or statements that Chasser *needs* a walker; she relies exclusively on mere observations that she regularly used a walker when she showed up to appointments.   Once again, use of a walker is not evidence of its medical necessity.[25]   All told, Chasser fails to identify any evidence in the record establishing that a walker was medically necessary.[26]   On the other hand, there was medical evidence that Chasser did not need a walker.   In a handwritten note, Dr. Anne Winkler opined that she "would make sure [Chasser] has been prescribed a cane [and] walker but [its] unclear why she would require these."   Therefore, the Court disagrees with Chasser's claim that overall, the medical evidence showed that she was medically required to use a walker.   Rather, the record contains some evidence that Chasser did not medically require a walker, and there are no medical opinions to the contrary.

The ALJ's decision is supported by substantial evidence.   There was no medical evidence that a walker was medically necessary for Chasser, and thus, the ALJ did not err by failing to consider her use of a walker in his RFC assessment.

---

[25] *Id.*

[26] *Elkins v. Astrue*, 442 F. App'x 406, 408 (10th Cir. 2011) ("[Plaintiff] presented no evidence that the cane was medically necessary.   And without such evidence, the ALJ had no obligation to address the cane in his residual functional capacity assessment.").

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is
**AFFIRMED**.

**IT IS SO ORDERED**.

Dated this 20th day of October, 2016.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE